# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| EDMOND CROIX and ALMA CROIX § | |
| § | |
| v.  § | 1:19-CV-102-LY |
| § | |
| PROVIDENT TRUST GROUP, LLC § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court are Defendant's Motion to Dismiss Plaintiffs' Original Petition (Dkt. No. 8); Plaintiffs' Response (Dkt. No. 10), and Defendant's Reply (Dkt. No. 12). The District Court referred the above motion to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. §636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules.

## I. GENERAL BACKGROUND

Plaintiffs Edmond and Alma Croix (together, "Plaintiffs") are an elderly couple who live in Pflugerville, Texas. Dkt. No. 1-4 ¶¶ 1, 8-10. Defendant Provident Trust Group, LLC ("Provident") is a trust company that acts as a custodian for certain investment retirement accounts ("IRAs"). *Id.* ¶ 2; Dkt. No. 7 at 1-2. Plaintiffs allege that Provident negligently failed to verify whether Plaintiffs' financial advisor was legally qualified to conduct transactions in their investment account. As a result, they allege that a man posing as a financial consultant has stolen nearly all of their retirement savings. Plaintiffs allege the following facts. They first met Brett Pittsenbargar in 2009, when acquaintances recommended him to help with Plaintiffs' tax preparations. *Id.* ¶¶ 11-13. Pittsenbargar represented that he was a financial consultant, specializing in retirement planning and investing. *Id.* ¶ 11. In fact, Pittsenbargar was not a CPA and he relied on third parties to prepare

Plaintiffs' tax returns. *Id.* ¶ 14. In 2013, Pittsenbargar "began to act a financial planner" for Plaintiffs. *Id.* ¶ 15. Pittsenbargar called himself a financial consultant, but he does not maintain any licenses or registrations to act in that capacity. *Id.* ¶ 16. He is not a Registered Investment Advisor with the U.S. Securities and Exchange Commission ("SEC"). *Id.* ¶ 17. He is not registered with the Financial Industry Regulatory Authority ("FINRA") or the Texas State Securities Board to act as a securities dealer. *Id.* ¶ 18.

When Plaintiffs first began working with Pittsenbargar, they maintained retirement accounts with several established financial institutions, including American Estate and Trust, Thrift Savings Plan, Security Benefits, Accuplan, and Fidelity Investments. *Id.* ¶ 18. In April 2015, Pittsenbargar directed Plaintiffs to transfer their retirement funds into IRAs maintained by Provident. *Id.* ¶ 20. Plaintiffs allege that Pittsenbargar's decision to use Provident as a custodian was not random; it was the result of Provident's marketing effort, which "actively solicits the business of investment advisors." *Id.* ¶ 21. Alma opened a Traditional IRA account, and Edmond opened both a Traditional IRA and a Roth IRA. *Id.* ¶ 24. When Plaintiffs opened the accounts, Provident "knew that Pittsenbargar was purporting to act as an investment advisor for Plaintiffs and has responsibility for the investments in their account." *Id.* ¶ 25. Provident provided Pittsenbargar with his own log-in to access the accounts, and communicated with Plaintiffs through emails to Pittsenbargar for "virtually every communication." *Id.* ¶ 26.

"Almost immediately" after Pittsenbargar directed Plaintiffs to move their funds into the Provident IRAs, Pittsenbargar executed three transactions purchasing securities in the Ironbridge Asset Fund, LLC and the Ironbridge Asset Fund 2, LLC (together, "Ironbridge"). *Id.* ¶¶ 27-28. Pittsenbargar invested a total of $203,000 of Plaintiffs' funds in Ironbridge through the Provident IRAs. *Id.* ¶¶ 28-29. Ironbridge was in fact an unregistered security issued by a fund owned by Pittsenbargar, which served as a "feeder fund" for Woodbridge Group of Companies, LLC

("Woodbridge"), a Ponzi scheme now subject to multiple law enforcement actions. *Id.* ¶¶ 30-31. Woodbridge has filed for bankruptcy in Delaware. *Id.* ¶ 32. Plaintiffs have "lost their entire investment and stand to recover nothing at all from the Woodbridge bankruptcy." *Id.* ¶ 33.

Plaintiffs allege that Provident caused their losses by failing to inquire as to whether Pittsenbargar had the legal capacity to act as a financial professional. *Id.* ¶ 34. Plaintiffs also allege that Pittsenbargar "was known" to Provident and that the company "actively solicited" Pittsenbargar's business. *Id.* ¶¶ 34-35. They allege that as a custodial bank, Provident has "a duty to its customers to inquire as to the legal capacity of known third-party financial professionals to execute transactions in customer accounts." *Id.* ¶ 37; *see id.* ¶ 35. Provident "breached this duty when it completely failed to inquire as to whether Pittsenbargar, the purported financial processional associated with Plaintiffs' account[,] was legally entitled to act in that capacity." *Id.* ¶ 37. "In fact, Pittsenbargar was not licensed by the SEC as a registered investment advisor, nor was he registered with FINRA or the State of Texas as a seller of securities." *Id.* ¶ 39. As a direct result of Provident's breach of its duties to Plaintiffs, Pittsenbargar executed financial transactions in the accounts Plaintiffs maintained with Provident Trust, causing Plaintiffs to lose $203,000, which comprised virtually all of their retirement savings. *Id.* ¶ 40.[1]

Based on these allegations, Plaintiffs assert a single claim of negligence against Provident. *Id.* ¶¶ 36-40. They seek damages, unspecified equitable relief, and any other relief to which they may be entitled. *Id.* ¶ 42. Provident moves to dismiss Plaintiffs' claim, asserting (1) the economic loss doctrine bars Plaintiffs' negligence claim; (2) Provident had no common law duty to investigate Plaintiffs' advisors or investments as a matter of law; (3) Provident had no contractual duty to advise

---

[1] Plaintiffs allege that they lost $203,000 at paragraph 29 and $204,000 at paragraph 40. *See* Dkt. No. 1-4 ¶¶ 29, 40. Given that Plaintiffs' summary of transactions by Pittsenbargar totals $203,000, the Court construes the amount at paragraph 40 to be a clerical error. *See id.* ¶ 28. In any event, the precise amount of damages is a question of fact.

Plaintiffs on their advisors or investments; and (4) Plaintiffs fail to plausibly allege that Provide proximately caused their damages. Dkt. No. 7.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P.12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(A)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

A court considering a motion to dismiss must accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). While a court must accept all of the claimant's well-pleaded facts as true, it is not bound to accept as true conclusory allegations or allegations that merely restate the legal elements of a claim. *See Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). In short, a claim should only be dismissed if a court determines that it is beyond doubt that the claimant cannot prove a plausible set of facts that support the claim and would justify relief. *See Twombly*, 550 U.S. at 570. A motion to dismiss pursuant to Rule 12(b)(6) is generally disfavored and rarely granted. *Turner v. Pleasant*, 663 F.3d

770, 775 (5th Cir. 2011). "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019) (citing *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

### III. ANALYSIS

**A.     Preliminary Issues**

Before turning to the merits of Provident's motion, the Court will reiterate the scope of its review at this stage. Both parties allege facts in their briefing that are outside of the Complaint. Provident seeks to rely on contracts attached to its response. Dkt. No. 7 at 11. Plaintiffs seek to rely on facts alleged in a separate case in Nevada.[2] Dkt. No. 10 at 10 n.19 (citing *Murray v. Provident Trust Group et al.*, Case No. 2:18-CV-01382 (D. Nev. filed July 26, 2018)). The Court cannot rely on fact allegations outside of the Complaint unless they are " central to the claim and referenced by the complaint." *Ironshore*, 912 F.3d at 763 (citing *Lone Star Fund*, 594 F.3d at 387). The Court will not consider fact allegations from a separate case. *See, e.g.*, *Ferguson v. Extraco Mortg. Co.*, 264 Fed. Appx. 351, 352 (5th Cir. 2007) ("A court may take judicial notice of 'a document filed in another court . . . to establish the fact of such litigation and related filings,' but generally cannot take notice of the findings of fact from other proceedings.") (quoting *Taylor*, 162 F.3d at 829–830).

Provident argues that the Court may consider the contracts attached to the motion to dismiss even though they are outside the complaint because the contracts are "central to the claim" and implicitly "referenced by the complaint" because Plaintiffs reference their accounts with Provident.

---

[2] For example, Plaintiffs allege in their response to the motion to dismiss that Provident was the IRA custodian for nearly 1500 accounts containing Woodbridge securities and that Provident "continued to accept investments in Woodbridge after learning it was fraudulent." Dkt. No. 10 at 10 n.19. If Plaintiffs want the Court to consider such facts, they must include them in their complaint.

5

*Id.* at 4 n.6. However, Plaintiffs' cause of action is a tort claim, not a breach of contract claim. It is not clear that the contracts are "central" to the claim in order for this Court to consider them at the motion to dismiss stage. Additionally, even if the Court were to consider the contracts now at the motion to dismiss stage, the Court cannot make a fact determination about the scope and terms of the parties' agreement without a complete evidentiary record. The Court therefore will not rely on the contracts at this time. The Court now turns to Provident's grounds for dismissal.

**B.     Economic Loss Doctrine**

Provident argues that the economic loss doctrine bars Plaintiffs' negligence claim. Dkt. No. 7 at 12-13. In Texas,[3] "[t]he economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (citations omitted). "But it does not bar all tort claims arising out of a contractual setting." *Id.* As the Texas Supreme Court has explained, "a party [cannot] avoid tort liability to the world simply by entering into a contract with one party [otherwise the] economic loss rule [would] swallow all claims between contractual and commercial strangers." *Id.* (quoting *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 419 (Tex. 2011)) (alterations in original). Accordingly, "a party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." *Id.* (citing *LAN/STV v. Martin K. Eby Const. Co., Inc.*, 435 S.W.3d 234, 242-43 (Tex. 2014) (discussing the limitations on recovery of purely economic damages by contractual strangers); *Southwestern Bell Telephone Co., v. DeLanney*, 809 S.W.2d 493, 494–95 (Tex. 1991) (suggesting

---

[3] Although the parties' choice of law is unclear in other parts of their briefing, the parties cite only Texas law regarding the economic loss rule. The Court therefore considers this argument under Texas law, as briefed by the parties.

that the source of the duty and the nature of the wrong should be examined to determine whether the underlying claim is in tort or contract)).

Provident reasons that because the parties entered into written contracts, "Plaintiffs cannot assert a tort claim to recover their alleged economic losses caused by their self-directed investment in Woodbridge." Dkt. No. 7 at 13. But the mere existence of a contract between Provident and Plaintiffs does not protect Provident from all tort liability. *See Chapman*, 445 S.W.3d at 718. Plaintiffs also do not allege that Provident breached any contractual duties.[4] Applying the Texas Supreme Court's test here, Plaintiffs state a tort claim that is distinct from the loss of their contractual expectancy because the duty allegedly breached—a duty to verify that Plaintiffs' agent was appropriately registered—is "independent of the contractual undertaking" and the harm suffered—fraud resulting in the loss of their entire investment—is "not merely the economic loss of a contractual benefit." *See id.* Plaintiffs' negligence claim on this theory of liability is not barred by the economic loss rule.

---

[4] This fact distinguishes this case from *Murray v. Provident Trust Group et al.*, Case No. 2:18-CV-01382 (D.Nev. filed July 26, 2018), a separate action against Provident filed in Nevada federal court. Provident cites this case as a supplemental authority for dismissal. Dkt. No. 16. The *Murray* plaintiffs seek to represent a class of investors who allege that Provident "failed to take any steps to ascertain the nature, assets underlying, or value of the Woodbridge Securities" and "continued to accept Woodbridge Securities as custodian from other customers that Woodbridge steered towards Defendant even after federal and state regulatory agencies had concluded that [an individual named Robert H. Shapiro] was operating Woodbridge in a way that broke various laws." *Murray,* Case No. 2:18-CV-01382 (Order, Dkt. No. 45 at 2). The *Murray* plaintiffs assert claims for breach of contract, breach of fiduciary duty, negligence and gross negligence, and unjust enrichment. *Id.* at 2-3. In an order granting Provident's motion to dismiss, the Nevada District Court dismissed all of the parties' claims with prejudice, except for the breach of contract claims, for which the court granted leave to file an amended complaint. *Id.* at 13. The Nevada court ruled that the economic loss doctrine barred the plaintiffs' tort claims because they alleged "only economic losses" and offered factually distinguishable case law from outside jurisdictions in support of their position. *Id.* at 11-12. The *Murray* plaintiffs also appear to base their tort claims at least in part on Provident's alleged breach of contractual duties. *See id.* at 2, 5, 7. Although *Murray* provides persuasive authority, it concerns different claims, different alleged conduct by Provident, and a different theory of negligence. It does not bind this Court.

## C. Duty to Plaintiffs

To set forth a negligence claim under Texas law, a Plaintiff must plausibly allege the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach. *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017) (citation omitted). "The threshold inquiry in a negligence case is duty." *Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 503 (Tex. 2017) (citing *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990)). "The existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question." *Id.* If there is no duty, there can be no liability. *Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex. 1999).

Provident argues that it had no common law duty to investigate Plaintiffs' advisors or investments as a matter of law. Dkt. No. 7 at 8-10. Plaintiffs allege that Provident had a "gatekeeping" duty "to simply determine whether or not Pittsenbargar held some appropriate registration." Dkt. No. 10 at 10. Plaintiffs argue that the source of this duty is a Nevada statute, which provides that "servicers or administrators of individual retirement accounts" have fiduciary duties. Dkt. No. 10 at 8 (citing Nev. Rev. Stat. §§ 163.554, 669.045). Plaintiffs do not assert a duty under Texas law.

The parties' briefing fails to adopt a clear position on their choice of law. Except for the section addressing duty, both parties' briefing relies on Texas law and seems to assume that this Court will apply Texas law to this dispute. However, Plaintiffs appear to import a Nevada duty into their claim that Provident was negligent under Texas law. Additionally, Provident argues that the terms of the parties' contracts "govern this dispute," Dkt. No. 7 at 11-13, but Plaintiffs counter that Provident "ignores completely their choice of law provision—which arguably dictates that Defendant's actions here are governed by Nevada law." Dkt. No. 10 at 8 n.13. Neither party adopts a consistent position on whether Texas or Nevada law applies in this action.

In a diversity case, federal courts apply the choice of law rules of the forum state. *Casa Orlando Apartments, Ltd. v. Fed. Nat. Mortg. Ass'n*, 624 F.3d 185, 190 (5th Cir. 2010). Texas courts follow the "most significant relationship" test in the Restatement (Second) of Conflict of Laws ("Restatement"). *Id.* (citations omitted). The choice of law is evaluated issue by issue. *Id.* at 191. In a tort case, the primary factors for choice of law are: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id.* (citing Restatement (Second) of Conflict of Laws § 145). Additionally, "Texas courts permit choice-of-law agreements and the default position is that they are enforceable," but "it is not uncommon for a party to overcome them." *Cardoni v. Prosperity Bank*, 805 F.3d 573, 581 (5th Cir. 2015). "To render a choice of law provision unenforceable," a party must show that "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties." *Id.* (citing Restatement (Second) of Conflict of Laws § 187(2); *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990) (applying the Restatement framework)).

Here, the parties' briefing and the record are insufficient for the Court to determine the choice of law. As discussed above, the Court cannot consider the contracts that contain the choice of law provision. *See supra*, Section III(A). Even assuming that the Court could consider the contracts, neither party offers a consistent position or supporting facts to assist the Court in evaluating whether the contracts represent the complete agreement of the parties or whether the choice of law provisions are enforceable. Only Provident addresses the choice of law problem here. Provident argues that

9

"no choice of law analysis is necessary" and Texas law applies because "the laws of the states do not conflict." Dkt. No. 12 at 1 n.1. But if the laws of Texas and Nevada did not conflict, Plaintiff would not need to rely on a Nevada statute for the source of Provident's duty. Further, Provident cannot maintain at the same time that the law of the forum state applies *and* that the terms of the parties' contracts govern the dispute, which would impose the Nevada choice of law. *See id.*; Dkt. No. 7 at 13. Because the Court cannot find from the parties' submissions whether Nevada or Texas law applies, the Court recommends denying the motion to dismiss on this ground without prejudice to re-urging at a later date.

D. **Contractual Duty**

Next, Provident argues it had no contractual duty to advise Plaintiffs on their advisors or investments. Dkt. No. 7 at 11-13. Provident attaches copies of the parties' Custodial Agreement and Direction of Investment Forms to its motion and argues that release and indemnity provisions bar this claim. *Id.* at 11 (citing Dkt. No. 7-3 (Custodial Agreement); Dkt. No. 7-4 (Direction of Investment Forms)). Provident also points to an express provision that "nothing in this Agreement shall be construed as conferring fiduciary status upon us." *Id.* The Court cannot consider the contracts at this stage. *See supra*, Section III(A). Even assuming that the Court could consider the contracts attached to Provident's response, the Court cannot conclude at the motion to dismiss stage that those agreements bar Plaintiffs' negligence claim. "In Texas, exculpatory clauses are not favored and are strictly construed." *Stine v. Marathon Oil Co.*, 976 F.2d 254, 260 (5th Cir. 1992) (citing *K & S Oil Well Service v. Cabot Corp.*, 491 S.W.2d 733, 738, 739 (Tex.Civ.App.—Corpus Christi, 1973, writ ref'd n.r.e.)). "To have effect, the contract must be clear and unambiguous." *Id.* (citing *K&S*, 491 S.W.2d at 738). "Before enforcing an indemnification clause for an indemnitee's own negligence, a court must be firmly convinced that the exculpatory provision reflects the intention of the parties." *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 267

10

(5th Cir. 2011) (quoting *Orduna S.A. v. Zen-Noh Grain Corp.*, 913 F.2d 1149, 1153 (5th Cir. 1990). Without a complete evidentiary record, the Court is not firmly convinced that the exculpatory provisions in the agreements attached to Provident's response reflect the intention of the parties.[5] The Court therefore recommends denying the motion to dismiss on this ground.

**E.     Proximate Causation**

Finally, Provident argues that Plaintiffs fail to plausibly allege that Provide proximately caused their damages. Dkt. No. 7 at 13-15. Because the Court finds that it cannot determine the existence of a duty from the parties' briefing, the Court does not reach whether Plaintiffs have satisfied the other elements of a negligence claim. *See supra*, Section III(C).

## IV.  RECOMMENDATION

Based upon the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **DENY** Provident's Motion to Dismiss Plaintiffs' Original Petition (Dkt. No. 7) consistent with the terms of this report and recommendation. In particular, the Court **RECOMMENDS** that the District Court **DENY WITHOUT PREJUDICE** Provident's motion to dismiss based on the ground that it had no duty to Plaintiffs.

## V.  WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within

---

[5] On this issue, Provident again points to the decision in *Murray v. Provident Trust Group et al.*, Case No. 2:18-CV-01382 (D.Nev. filed July 26, 2018). However, the *Murray* plaintiffs attached the contract containing the exculpatory provisions to their complaint and sought to rely on that contract in their briefing. *Id.* at 4-5. The Nevada court also specifically declined to consider any contracts between the parties that were not attached to the complaint and therefore "outside the scope of Plaintiffs' Complaint." *Id.* at 5.

fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 9th day of December, 2019.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE